**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Christine M. Walsh, <br><br> Plaintiff, <br><br> vs. <br><br> Michael J. Astrue, Commissioner of Social Security, <br><br> Defendant. | No. CIV 03-440-TUC-JMR (GEE) <br><br> **REPORT AND RECOMMENDATION** |

The plaintiff filed this action for review of the final decision of the Commissioner for Social Security pursuant to 42 U.S.C. §1383(c)(3). The case has been referred to the United States Magistrate Judge pursuant to the Rules of Practice of this court.

Pending before the court is a motion for summary judgment filed by the plaintiff on October 15, 2007, and a cross-motion for summary judgment filed by the defendant on February 25, 2008. [docs. #29, 32, 37]

The Magistrate Judge recommends that the District Court, after its independent review, deny the plaintiff's motion for summary judgment and grant the defendant's cross-motion. Substantial evidence supports the ALJ's conclusion that Walsh is not disabled.

PROCEDURAL HISTORY

In April of 2002, Walsh filed an application for supplemental security income benefits alleging disability due to "nerve damage, fractures on back, legs, and right arm." (Tr. 69, 115). The Social Security Administration (SSA) denied her application initially and again upon reconsideration. (Tr. 51-54, 58-61). Walsh requested review and on February 5, 2003, appeared without counsel at a hearing before Administrative Law Judge (ALJ) Frederick J. Graf. (Tr. 11-17). In his decision, dated May 27, 2003, the ALJ found Walsh was not disabled. (Tr. 11-17). Walsh appealed, but the Appeals Council denied review making the decision of the ALJ the final decision of the Commissioner. (Tr. 2-4); 20 C.F.R. § 416.1481.

Morgan then filed the instant complaint in U.S. District Court appealing the Commissioner's final decision. *See* 20 C.F.R. § 422.210(a). She filed the instant motion for summary judgment on October 15, 2007. The Commissioner filed the instant cross-motion for summary judgment on February 25, 2008.

Claimant's Work History and Medical History

Walsh was 39 years old on the date of the ALJ's decision. (Tr. 17, 283). From 1988 to 1999, she worked as a sales person, cosmetologist, office manager, and sterilization tech. (Tr. 116).

On December 2, 1999, Walsh sustained severe injuries as a result of falling from a freeway overpass in an apparent suicide attempt. (Tr. 157). She had several surgeries to repair fractures in her legs, pelvis and lower spine. *Id.* She was placed on Remeron and Zyprexa for "suicidal ideation." *Id.*

Walsh was given a psychiatric evaluation on December 3, 1999. (Tr. 176). She was diagnosed with "Axis I: suicide attempt - actively suicidal; chronic depression relative to marital/custody problems, R/O schizo-affective illness;  Axis II:  deferred; very poor relationships and probably borderline personality disorder; Axis III: multiple trauma; Axis IV: separation from children, just quit job." (Tr. 176).

1    Walsh was admitted on February 17, 2000 at the Marianjoy rehabilitation clinic. (Tr.
2 274). Norman Aliga, M.D., noted past medical history for chronic constipation and depression.
3 *Id.* He diagnosed "gait and self-care impairment . . . secondary to sacral and thoracolumbar
4 fractures . . . , post sacral laminectomy for nerve root decompression, left tibial fibular fracture
5 and left talar fracture, unsuccessful suicide attempt, neurogenic bladder and bowel and right
6 tibia fracture." (Tr. 276).

7    She was discharged from the Marianjoy rehabilitation clinic in March of 2000. (Tr.
8 263). Norman Aliga, M.D., diagnosed Walsh as "Primary: status post suicide attempt with
9 multiple fractures. Secondary: 1. Depression; 2. Suicide attempt history." (Tr. 265).

10    In May of 2002, Walsh completed an Activities of Daily Living Questionnaire for
11 Physical Impairments. (Tr. 86-88). She reported being able to use her hands and arms with
12 only slight difficulty. *Id.* She has trouble carrying heavy items due to pain and balance
13 problems. *Id.* She reports she can "sometimes" sit for two hours at a stretch. *Id.* She performs
14 household chores such as "cleaning, making beds, [and] doing laundry" for a half-hour each
15 day. *Id.*

16    In July of 2002, Walsh was examined by disability determination physician, Roopa K.
17 Karri, M.D. (Tr. 138-41). Karri noted "[h]istory of back injury and pelvic injury in an accident,
18 status post surgery to fix the pelvis with S1 nerve damage." *Id.* "Right leg pain secondary to
19 the accident." *Id.* "She needs a cane to walk." *Id.* "Pelvic pain and lower back pain secondary
20 to the previous injuries as described above with a positive straight leg raising test and decreased
21 range of motion." *Id.* Karri noted "no signs of depression, agitation, irritability or anxiety."
22 *Id.*

23    In August of 2002, non-examining state agency physician, Paul LaFave, M.D., completed
24 a Residual Functional Capacity Assessment. (Tr. 130-37). LaFave concluded Walsh could lift
25 and/or carry 20 pounds occasionally and 10 pounds frequently. *Id.* She could stand and/or walk
26 at least 2 hours in an 8-hour workday. *Id.* She could sit for about 6 hours in an 8-hour workday.
27 *Id.* She should never climb ladders, ropes, or scaffolds. *Id.*

28

In September of 2002, non-examining state agency physician, Nick Mansour, M.D., reviewed LaFave's report and affirmed it as written. (Tr. 26, 137).

On February 5, 2003, Walsh appeared without counsel at a hearing before Administrative Law Judge (ALJ) Frederick J. Graf. (Tr. 280). She was 38 years old on the date of the hearing. (Tr. 283). She finished 12th grade and had a GED. (Tr. 121, 283). She testified she had a foot ulcer that was not healing well. (Tr. 285). She stated "with my pelvic fractures and my S-1 nerve damage, it's difficult to try to maintain a job for any amount of time, just because of neuropathy in my feet and pain in my spine, and my foot wound." (Tr. 285).

CLAIM EVALUATION

Social Security Administration (SSA) regulations require that disability claims be evaluated pursuant to a five-step sequential process. 20 C.F.R. §§ 404.1520, 416.920; *Baxter v. Sullivan,* 923 F.2d 1391, 1395 (9th Cir. 1991). The first step requires a determination of whether the claimant is engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If so, then the claimant is not disabled, and benefits are denied. *Id.* If the claimant is not engaged in substantial gainful activity, the ALJ proceeds to step two which requires a determination of whether the claimant has a "medically severe impairment or combination of impairments." 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

In making a determination at step two, the ALJ uses medical evidence to consider whether the claimant's impairment more than minimally limits or restricts his or her "physical or mental ability to do basic work activities." *Id*. If the ALJ concludes the impairment is not severe, the claim is denied. *Id*. Upon a finding of severity, the ALJ proceeds to step three which requires a determination of whether the impairment meets or equals one of several listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); 20 C.F.R. Pt. 404, Subpt. P, App.1. If the claimant's impairment meets or equals one of the listed impairments, then the claimant is presumed to be disabled, and no further inquiry is necessary. *Ramirez v Shalala,*

8 F.3d 1449, 1452 (9th Cir. 1993). If the claimant's impairment does not meet or equal a listed impairment, evaluation proceeds to the next step.

The fourth step requires the ALJ to consider whether the claimant has sufficient residual functional capacity[1] (RFC) to perform past work. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If the ALJ concludes the claimant has sufficient RFC, then the claim is denied. *Id*. If the claimant cannot perform any past work, then the ALJ must move to the fifth step which requires consideration of the claimant's RFC to perform other substantial gainful work in the national economy in view of claimant's age, education and work experience. 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4).

In determining whether the claimant retains the ability to perform other work, the ALJ may refer to the Medical Vocational Guidelines ("the grids") promulgated by the SSA. *See* 20 C.F.R. Pt. 404, Subpt. P, App.2; *Desrosiers v. Secretary of Health and Human Services,* 846 F.2d 573, 576-577 (9th Cir. 1988). The grids categorize jobs according to their exertional requirements such as sedentary work, light work, or medium work. *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999). The grids calculate whether or not the claimant is disabled based on the claimant's exertional ability, age, education, and work experience. *Id.* The grids are a valid basis for denying claims where they completely and accurately describe the claimant's abilities and limitations. *Id.* at 1101-02. If the claimant has only exertional limitations, the claim may be resolved based only on the grids. *Lounsburry v. Barnhart*, 468 F.3d 1111, 1115 (9th Cir. 2006).

If the claimant has significant non-exertional limitations, the grids do not apply. *Penny v. Sullivan,* 2 F.3d 953, 958-959 (9th Cir.1993). "Non-exertional limitations are limitations that do not directly affect a claimant's strength." *Burkhart v. Bowen*, 856 F.2d 1335, 1340 (9th Cir. 1988). Mental limitations, for example, are non-exertional. *Id.* at 1340-41. If significant non-exertional limitations prevent the claimant from performing the full range of work in any

---

[1] Residual functional capacity is defined as that which an individual can still do despite his or her limitations. 20 C.F.R. §§ 404.1545, 416.945.

- 5 -

1 exertional category, the ALJ must take the testimony of a vocational expert to deny the claim.
2 *Id.* at 1341.

3      If the claimant has both exertional and non-exertional limitations, the ALJ must consult
4 the grids first before considering the testimony of a vocational expert. *Id.* If the grids direct a
5 finding of disability, that finding must be adopted by the Commissioner. *Lounsburry,* 468 F.3d
6 at 1116.

### The ALJ's Findings

At step one of the disability analysis, the ALJ found Walsh "has not engaged in substantial gainful activity since the alleged onset of disability." (Tr. 16). At step two, he found Walsh has severe impairments, "nerve damage, fractures to back, legs and right arm." (Tr. 13). At step three, the ALJ found Walsh's impairments did not meet or equal the criteria for any impairment found in the Listing of Impairments, Appendix 1, Subpart P, of 20 C.F.R., Part 404. (Tr. 16). The ALJ then analyzed Walsh's residual functional capacity (RFC). (Tr. 16). He found she has "residual functional capacity for sedentary work." *Id.* At step four, the ALJ found Walsh could not perform her past relevant work. (Tr. 16). At step five, the ALJ employed the grids to conclude Walsh was not disabled. (Tr. 17).

### STANDARD OF REVIEW

An individual is entitled to disability benefits if he or she demonstrates, through medically acceptable clinical or laboratory standards, an inability to engage in substantial gainful activity due to a physical or mental impairment that can be expected to last for a continuous period of at least twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). "[A] claimant will be found disabled only if the impairment is so severe that, considering age, education, and work experience, that person cannot engage in any other kind of substantial gainful work which exists in the national economy." *Penny v. Sullivan,* 2 F.3d 953, 956 (9th Cir. 1993) (*quoting Marcia v. Sullivan,* 900 F.2d 172, 174 (9th Cir. 1990)).

The findings of the Commissioner are meant to be conclusive. 42 U.S.C. §§ 405(g), 1383(c)(3). The decision to deny benefits "should be upheld unless it contains legal error or is not supported by substantial evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* It is "more than a mere scintilla but less than a preponderance." *Id.*.

"Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Orn*, 495 F.3d at 630. "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Id.*

In evaluating evidence to determine whether a claimant is disabled, the opinion of a treating physician is entitled to great weight. *Ramirez v. Shalala,* 8 F.3d 1449, 1453-54 (9th Cir. 1993). The Commissioner may reject a treating physician's uncontradicted opinion only if he sets forth clear and convincing reasons for doing so. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). If the treating physician's opinion is contradicted by another doctor, the Commissioner may reject that opinion only if he provides specific and legitimate reasons supported by substantial evidence in the record. *Lester,* 81 F.3d at 830. No distinction is drawn "between a medical opinion as to a physical condition and a medical opinion on the ultimate issue of disability." *Rodriguez v. Bowen*, 876 F.2d 759, 761 n.7 (9th Cir. 1989).

"The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a non[-]examining physician." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). "[T]he Commissioner must provide 'clear and convincing' reasons for rejecting the uncontradicted opinion of an examining physician." *Id.* "[T]he opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* at 830-31.

"Where medical reports are inconclusive, questions of credibility and resolution of conflicts in the testimony are functions solely of the [Commissioner]." *Magallanes,* 881 F.2d 747, 751 (9th Cir. 1989) (punctuation omitted). The Commissioner's finding that a claimant is

- 7 -

1 less than credible, however, must have some support in the record.  *See Light v. Social Security*
2 *Administration,* 119 F.3d 789 (9th Cir. 1997).

3       The ALJ need not accept the claimant's subjective testimony of disability, but if he
4 decides to reject it, "[he] must provide specific, cogent reasons for the disbelief." *Lester,* 81
5 F.3d at 834. "Unless there is affirmative evidence showing that the claimant is malingering, the
6 Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing."
7 *Id.*  "General findings are insufficient; rather, the ALJ must identify what testimony is not
8 credible and what evidence undermines the claimant's complaints." *Id.*

10 ## DISCUSSION

11       The decision of the ALJ is supported by substantial evidence. He permissibly relied on
12 the report of the examining physician in evaluating Walsh's residual functional capacity. *See*
13 20 C.F.R. § 416.920 (e). His conclusion that Walsh can perform the full range of sedentary
14 work is supported by the assessment of the non-examining state agency physicians. Applying
15 the grids, the ALJ properly concluded Walsh is not disabled.  *See Tackett v. Apfel*, 180 F.3d
16 1094, 1101-02 (9th Cir. 1999).

17       The ALJ discounted Walsh's subjective complaints of disability as inconsistent with the
18 medical record. *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of
19 medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that
20 the ALJ can consider in his credibility analysis."). The ALJ noted that when Walsh was
21 discharged from rehabilitation in February of 2000 "she was able to perform weight bearing
22 [tasks], eating independently, and had an independent to modified independent function with
23 some supervision." (Tr. 13). Walsh was examined by the disability determination physician,
24 Roopa K. Karri, M.D., approximately 2 and one-half years after her surgeries, and while Karri
25 observed some lingering effects such as "decreased sensation in the left foot and an absent ankle
26 jerk" he found her "strength and range of motion are normal in the upper and lower
27 extremities." *Id.*, (Tr. 138-41).

1  The ALJ further noted that since her discharge, Walsh has not sought any further
2  treatment for her injuries or for her pain. (Tr. 14-15). There is no evidence in the record of any
3  further mental treatment or any allegation of continuing mental impairments. *Id.*; *Burch*, 400
4  F.3d at 681 ("The ALJ is permitted to consider lack of treatment in his credibility
5  determination."). In her Activities of Daily Living questionnaire, Walsh reported being able to
6  care for her daily needs and perform light house work. (Tr. 14, 86-88). Household activities
7  are generally not performed with the same persistence and pace required in the workplace, but
8  they may be considered by the ALJ in evaluating a claimant's subjective testimony of disability.
9  *Morgan v. Apfel*, 169 F.3d, 595, 600 (9th Cir. 1999). The ALJ provided clear and convincing
10 reasons for discounting Walsh's subjective testimony of disability.

11 Walsh maintains she has "state physicals each year with physicians signing proper paper
12 work [i]ndicating a physical condition that will never change that impedes earning a living filed
13 each year." [doc. # 29] The record lends some support to her allegations. The examining
14 physician, Roopa K. Karri, found Walsh has physical impairments that affect her ability to walk
15 and raise her leg. (Tr. 138-41). These impairments certainly limit the type of jobs Walsh can
16 perform and therefore "impede[]" her ability to "earn[] a living." The ALJ acknowledged she
17 cannot return to her past relevant work as a cosmetologist because she is limited in her ability
18 to stand and walk. (Tr. 15). There is, however, no indication in the medical record that her
19 impairments are so severe that they render her completely disabled.

21 RECOMMENDATION

22 For the foregoing reasons, the Magistrate Judge recommends that the District Court, after
23 its independent review, deny the plaintiff's Motion for Summary Judgment [doc. #29] and grant
24 the defendant's Motion for Summary Judgment. [docs. # 32, 37] The defendant's motions for
25 entry of judgment should be granted. [docs. # 20, 22, 24]

26 Pursuant to 28 U.S.C. § 636(b), any party may file and serve written objections within
27 10 days after being served with a copy of this Report and Recommendation. If objections are

1  not timely filed, the party's right to de novo review may be waived. *See United States v. Reyna-*
2  *Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc), *cert. denied*, 540 U.S. 900 (2003).
3        The Clerk of the Court is directed to send a copy of this Report and Recommendation
4  to all parties.

6        DATED this 13th day of May, 2008.

                                Glenda E. Edmonds
                                United States Magistrate Judge